UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
 ------------------------------------------------------------X

JANE DOE,                                                    Case No.:

                              Plaintiff,              **COMPLAINT**

v.                                                           JURY TRIAL DEMAND

HF MANAGEMENT SERVICES LLC,
HEALTHFIRST, INC. and
GERARD NACHBAUR, individually, ROBINSON
ALMACHE, individually and VICTOR DEJNEKA,
Individually,

                              Defendants.
 ------------------------------------------------------------X


        Plaintiff, JANE DOE (hereinafter referred to as "Plaintiff" and/or "DOE") is, through her

counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendants the Defendant HF

MANAGEMENT SERVICES, LLC (hereinafter referred to as "Defendant" and/or "HF"),

HEALTHFIRST, INC., (hereinafter referred to as "Defendant" and/or "HEALTHFIRST"), and

GERARD    NACHBAUR,    individually,(hereinafter   referred   to   as   Defendant   and/or

"NACHBAUR"), and ROBINSON ALMACHE, individually, (hereinafter referred to as

Defendant and/or ALMACHE), and VICTOR DEJNEKA, individually, (hereinafter referred to as

Defendant and/or "DEJNEKA") as follows:

**NATURE OF CASE**

1. Plaintiff complains pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), The New York State Executive Law, The New York City Administrative Code, New York City Human Rights Law, and seeks damages to redress the injuries Plaintiff suffered as a result of being subjected to sex/gender and sexual orientation discrimination, sexual harassment, a hostile work environment, retaliation, and unlawful termination.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state and city law claims under 28 U.S.C. § 1367.

3. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

4. Additionally, the Court has supplemental jurisdiction under the State laws.

5. Jurisdiction of this action is also conferred upon this Court pursuant to 28 U.S.C. §1332(a). Plaintiff presents claims arising, *inter alia*, under Federal law and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. On or around December 11, 2017, Plaintiff filed her charge with the Equal Employment Opportunity Commission ("EEOC"), Federal Charge number 520-2018-01387.

7. Around August 10, 2018, Plaintiff received the EEOC's Right to Sue Letter in reference to her EEOC charge.

8.  Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the EEOC's Right to Sue Letter.

## PARTIES

9.  At all times material, Plaintiff JANE DOE (hereinafter also referred to as "Plaintiff") was a 30-year-old individual homosexual female who is a resident of the State of New York and resides the County of Queens.

10. At all times material, Defendant HF MANAGEMENT SERVICES, LLC (hereinafter referred to as "Defendant" and/or "HF") was, and still is, a domestic limited liability company doing business in the State of New York with its primary place of business in New York County, New York.

11. Defendant HF is considered an employer under the New York State Executive Law, New York Labor Law, and New York City Administrative Code.

12. At all times material, Defendant HEALTHFIRST, INC., (hereinafter referred to as "Defendant" and/or "HEALTHFIRST") was, and still is, a domestic not-for-profit corporation authorized to do business in the State of New York with its primary place of business in the County of New York, New York.

13. Defendants HF and HEALTHFIRST are considered employers under the New York State Executive Law, New York Labor Law, and New York City Administrative Code.

14. At all times material, Defendant GERARD "JERRY" NACHBAUR (hereinafter referred to as "NACHBAUR" or "Defendant") is an individual male who, upon information and belief, is a resident of the State of New York and resides in the City of New York, County of New York.

15. At the time of Plaintiff's employment, Defendants HF and HEALTHFIRST employed Defendant NACHBAUR as a Project Manager.

16. As Defendants' Project Manager, NACHBAUR held supervisory authority over Plaintiff DOE, including the authority to evaluate Plaintiff's performance, with strong influence over decisions regarding the termination of Plaintiff's employment.

17. At all times material, Defendant ROBINSON ALMACHE (hereinafter referred to as "ALMACHE" and/or "Defendant") is an individual male who, upon information and belief, is a resident of the State of New York and resides in the City of New York, County of New York.

18. At the time of Plaintiff's employment, Defendants HF and HEALTHFIRST employed Defendant ALMACHE as a Project Manager.

19. As Defendants' Project Manager, ALMACHE held supervisory authority over Plaintiff DOE, including the authority to evaluate Plaintiff's performance, with strong influence over decisions regarding the termination of Plaintiff's employment.

20. At all times material, Defendant VICTOR DEJNEKA (hereinafter referred to as "DEJNEKA" or "Defendant") is an individual male who, upon information and belief, is a resident of the State of New York and resides in the City of New York, County of New York.

21. At the time of Plaintiff's employment, Defendants HF and HEALTHFIRST employed Defendant DEJNEKA as a Project Manager.

22. As Defendants' Project Manager, Defendant DEJNEKA held supervisory authority over Plaintiff DOE, including the authority to evaluate Plaintiff's performance, with strong influence over decisions regarding the termination of Plaintiff's employment.

23. At all times material, Defendants HF, HEALTHFIRST, NACHBAUR, ALMACHE and DEJNEKA (hereinafter referred to collectively as "Defendants") are subjected to Federal law,

4

New York State Executive Law, New York Labor Law, and New York City Administrative Code.

24. At all times material, Defendants HF and HEALTHFIRST were joint employers of Plaintiff.

## STATEMENT OF FACTS

25. Around February 18, 2014, Defendants hired Plaintiff DOE as a Member Services Representative for Defendants' Member Services Department in their New York office. Plaintiff's duties included: coordinating tasks, scheduling, risk management and, *inter alia*, various administrative and customer services duties.

26. Throughout her employment, Plaintiff DOE's was frequently awarded with quarterly bonuses. Approximately one year after Plaintiff was hired, she was promoted to the position of Project Coordinator.  On at least one occasion, Plaintiff received a note from her supervisor praising the quality Plaintiff's work performance.

27. Around May 4, 2015, Defendants promoted Plaintiff DOE to the position of Project Coordinator at Defendants' Project Management Office.

28. Soon after Plaintiff was promoted to Project Coordinator, her Project Manager at the time, Defendant ALMACHE, told her to "***Dress more like them***"—referencing the other female employees on the team who wore more feminine clothing.

29. Plaintiff was offended and insulted by this directive and complained to her direct supervisor, Defendant DEJNEKA that she felt the comment was discriminatory harassment regarding her sex and sexual orientation. Plaintiff cited the specific provision in the company's employee handbook regarding sexual harassment that Defendant ALMACHE's violated in her complaint to Defendant DEJNEKA.

30. Defendant DEJNEKA laughed at the complaint, and told Plaintiff that he had "***been so busy,
    [he had] not watched the [company's] sexual harassment [training video] and [had] not
    received any training regarding sexual harassment***".

31. Shortly after Plaintiff complained to Defendant DEJNEKA about Defendant ALMACHE's
    inappropriate comments, Defendant DEJNEKA and another HR supervisor informed Plaintiff
    that they didn't think Mr. Defendant ALMACHE's comment was sexual harassment and that
    they didn't think it violated company policy and to "***just go back to work***".

32. No substantive action was taken by Defendants HF and HEALTHFIRST to address Plaintiff's
    complaint.

33. Shortly after Plaintiff's complaint against Defendant ALMACHE for sexual harassment,
    Plaintiff was written up and placed on a performance improvement plan in retaliation for
    complaining about sexual harassment.

34. As a Project Coordinator, Plaintiff was a "Project Manager in training." According to
    Defendants' training procedure, as a "Project Manager in training," Plaintiff would shadow a
    Project Manager who would then assign Plaintiff a portion of the Manager's project to
    Plaintiff. After this training period, the Project Coordinator would normally be promoted to
    be a Project Manager.

35. According to Defendants training procedure, in order for a Project Coordinator to be matched
    with a Project Manager and that Project Manager's projects, the trainee complete a "Project
    Coordinator Request" form. The Project Coordinator Request form requests that a specific
    Project Coordinator work under a Project Manager's tutelage.

36. Around February 7, 2017, Defendant NACHBAUR began joining Plaintiff  on her lunch
    break, or during her afternoon breaks for bubble tea or coffee.

37. Around March, 2017, Plaintiff began to routinely go out for a for lunch, coffee or bubble tea with Defendant NACHBAUR in order to build a rapport and foster the professional mentor/mentee relationship between herself and Defendant NACHBAUR.

38. Around April 3, 2017, Defendant NACHBAUR unofficially became Plaintiff's Project Manager, as she began assisting him on projects and in meetings.

39. Around April 5, 2017, Plaintiff's completed the "Project Coordinator Request" form requesting she work with Defendant NACHBAUR.

40. Shortly after their lunch, Defendant NACHBAUR sent a text to Plaintiff  inviting her to his beach house.

41. Plaintiff  rejected Defendant NACHBAUR's offer because she felt uneasy about being alone with Defendant NACHBAUR outside of work.

42. Around April 11, 2017, Plaintiff  and Defendant NACHBAUR went to lunch together. Plaintiff mentioned, how she was attempting to lose weight and go on a diet. Defendant NACHBAUR responded saying, "*You don't need to lose weight. I think you are hot.*"

43. Defendant NACHBAUR's sexual comment and obvious sexual advance shocked Plaintiff as she found it extremely inappropriate and it made her feel intimidated and fearful for her job because Defendant NACHBAUR was the project manager for the project Plaintiff was assigned to and held influence over decisions concerning Plaintiff's performance evaluations.

44. After their food arrived, Defendant NACHBAUR attempted to pay for both of their meals. He told Plaintiff, "*I want to repay you for paying for my birthday lunch*." Defendant NACHBAUR then invited Plaintiff to lunch again.

45. Plaintiff accepted the invitation because she wanted to build a good working relationship with Defendant NACHBAUR. When Plaintiff began to sit down across from Defendant

NACHBAUR, he motioned to her and told her to sit on the side of the table next to the corner where he was seated, so she would be physically closer to him.  This made Plaintiff uncomfortable, yet she complied nonetheless so as not to offend Defendant NACHBAUR.

46. After lunch, as they were walking back to the office, Defendant NACHBAUR put his hand on Plaintiff's shoulder as she was walking away to get her attention. Defendant NACHBAUR then leaned in close to Plaintiff's face and attempted to kiss Plaintiff on her lips.

47. When Plaintiff realized that Defendant NACHBAUR's lips were only inches away from hers, she leaned her head back in order to avoid Defendant NACHBAUR's unwanted kiss.

48. Defendant NACHBAUR noticed Plaintiff  move away and said, "***I was trying to give you a kiss.***"

49. Plaintiff  remained in shock as Defendant NACHBAUR walked away from her, back to the office.

50. Later in the day, after Defendant NACHBAUR attempted to kiss Plaintiff, Defendant NACHBAUR invited Plaintiff  out for coffee at Starbucks, ostensibly to discuss the incident of his failed attempt to kiss her and try to ease tensions.

51. While at the Starbucks, Defendant NACHBAUR noticed a ring on Plaintiff 's pinky ring and asked, "***Is that an engagement ring?***"

52. Plaintiff  replied, "***No I am not engaged to anyone.***"

53. After they left the Starbucks store, Plaintiff decided to confront Defendant NACHBAUR over his prior unwelcomed sexual advances. She told him, "***Do you have a second? What happened earlier really bothered me. I always see you as a father figure. I am not sure if I did anything that make you think otherwise. I only see you as a father. I am not interested in you…***"

54. Plaintiff did not even finish what she wanted to say when Defendant NACHBAUR interrupted her to say, "***Oh, i was just trying to be a nice guy***."

55. Around April 13, 2017, Defendant NACHBAUR submitted an official report to Defendants stating that Plaintiff's performance was subpar and did not meet expectations in retaliation for Plaintiff's rejection of Defendant NACHBAUR's sexual advances.

56. Defendant NACHBAUR issued this false report about Plaintiff to Defendants' Management in retaliation for Plaintiff's refusal to consent to his unwanted and unlawful sexual advances.

57. Around April 20, 2017, Defendants' Management issued Plaintiff an unreasonable "Performance Improvement Plan" as well as a baseless caution notice for her performance.

58. Around May 31, 2017, Plaintiff reported Defendant NACHBAUR's unlawful sexual advances to Defendants' HR Business Partner, Djuan Blakemore (hereinafter referred to as "HRBP BLAKEMORE). HRBP BLAKEMORE told Plaintiff that they would investigate her claim.

59. Around June 1, 2017, HRBP BLAKEMORE met with Plaintiff for a second time to inform her that she would be removed from Defendant NACHBAUR's project and placed on a new project under the management of Supervisor MAGDALENA.

60. Instead, around June 2, 2017, because of Plaintiff's sex/gender, her sexual orientation and in retaliation for Plaintiff 's refusal to acquiesce to Defendant NACHBAUR's unlawful and unwelcomed sexual advances and in retaliation for Plaintiff 's complaints of unlawful sexual harassment, Defendants terminated Plaintiff.

61. The above are just some examples of the sex discrimination, sexual harassment, hostile work environment, and retaliation to which Defendants subjected Plaintiff.

62. As a result of Defendants' unlawful and discriminatory actions, Plaintiff is constantly fearful for her safety and wellbeing.

63. As a result of Defendants' unlawful and discriminatory actions, Plaintiff is severely physically and emotionally distressed that she is having difficulty eating and sleeping.

64. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted professional humiliation resulting in extreme emotional distress, severe depression, and extreme anxiety.

65. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

66. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

67. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff  demands punitive damages against Defendants.

68. Defendants' conduct constitutes a continuing violation.

69. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff to on an ongoing and continuous basis.

70. Defendants discriminated against Plaintiff because of her sex/gender and because she complained or opposed the unlawful conduct of Defendants related to the above protected classes.

71. Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

72. At all material times Plaintiff opposed and complained of Defendant's ongoing discrimination, retaliation, and unlawful conduct.

73. At all times material, Defendants HF and HEALTHFIRST, and their supervisors acted with deliberate indifference to the discrimination and retaliation Plaintiff faced.

74. As a result of Defendants' continued harassment of Plaintiff, she suffered numerous injuries including physical, economic, and emotional damages.

75. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted professional humiliation resulting in extreme emotional distress, severe depression, and extreme anxiety. Further, Plaintiff claims aggravation, activation and/or exacerbation of any preexisting condition.

76. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

77. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

78. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants.

79. The above are just some examples of the unlawful discrimination to which Defendants subjected Plaintiff.

80.  Plaintiff claims a continuing practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine. The Defendants' acts and/failures to act constituted a continuing violation of federal, state and city law.

81.  Plaintiff claims that Defendants discriminated against Plaintiff because of her sex/gender and because he complained about and opposed the unlawful conduct of Defendants related to the above protected classes.

82.  Plaintiff claims alternatively (in the event Defendants claims so or that the Court so determines) that Plaintiff was an independent contractor, and Plaintiffs makes all applicable claims for the above conduct and facts under the applicable law pertaining to independent contractors.

83.  Plaintiff hereby demands reinstatement to her position.

## AS A FIRST CAUSE OF ACTION: DISCRIMINATION UNDER TITLE VII [NOT AGAINST INDIVIDUAL DEFENDANTS]

84.  Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

85.   Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

86.   Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender and sexual orientation.

## AS A SECOND CAUSE OF ACTION: RETALIATION
## UNDER TITLE VII
## [NOT AGAINST INDIVIDUAL DEFENDANTS]

87. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

88. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has    opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

89. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of her opposition to the unlawful employment practices of Defendant.

## AS A THIRD CAUSE OF ACTION: DISCRIMINATION
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]

90. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

91. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ

or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

92. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, together with sexual harassment, causing a hostile work environment and wrongfully terminated Plaintiff's employment.

93.  Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.


## AS A FOURTH CAUSE OF ACTION: RETALIATION
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]


94.  Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

95.  New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

96.  Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment on the basis of Plaintiff's opposition to the unlawful practices of Defendants.

97.  Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A FIFTH CAUSE OF ACTION: AID AND ABET
## UNDER NEW YORK STATE LAW
## [AGAINST ALL DEFENDANTS]

98.  Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

99.  New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

100. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

101. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A SIXTH CAUSE OF ACTION: DISCRIMINATION
## UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

102. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

103. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

104. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of race discrimination, gender discrimination, pregnancy discrimination, disability discrimination, age discrimination, and hostile work environment.

105. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

**AS A SEVENTH CAUSE OF ACTION: RETALIATION
UNDER NEW YORK CITY LAW
[AGAINST ALL DEFENDANTS]**

106. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

107. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

108. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A EIGHTH CAUSE OF ACTION: AID AND ABET
## UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

109. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

110. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

111. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.


## AS A NINTH CAUSE OF ACTION: INTERFERENCE WITH PROTECTED RIGHTS
## UNDER NEW YORK CITY LAW
## [AGAINST ALL DEFENDANTS]

112. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

113. New York City Administrative Code Title 8-107(19) Interference with protected rights.

114. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

115. Defendants violated the section cited herein as set forth.

### AS A TENTH OF CAUSE OF ACTION: SUPERVISORY LIABILITY
### UNDER NEW YORK CITY LAW
### [AGAINST ALL DEFENDANTS]

116. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as

though fully set forth herein.

117. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent

or independent contractor provides:

> A.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
> B.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
> > i.   The employee or agent exercised managerial or supervisory responsibility; or
> > ii.  The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's  discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
> > iii. The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

118. Defendants violated the above section as set forth herein.


### JURY DEMAND


Plaintiff requests a jury trial on all issues to be tried.


   **WHEREFORE**, Plaintiff  respectfully requests a judgment against the Defendants jointly

and  severally  for  all  damages  including  compensatory,  emotional  distress,  statutory,  punitive

damages, attorney's fees and costs in an amount to be determined at the time of trial and awarding

Plaintiff  such other and further relief as the Court may deem equitable, just and proper to remedy

the Defendants' unlawful conduct.


Dated:   New York, New York
             October 31, 2018

Respectfully submitted,

DEREK T. SMITH LAW GROUP. P.C.
*Attorneys for Plaintiff*

By: Seamus Barrett
One Penn Plaza, Suite 4905
New York, NY 10119
(212) 587-0760